## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

DETECTIVES ENDOWMENT ASSOCIATION OF
THE CITY OF NEW YORK, on behalf of itself and
all others similarly situated,

        *Plaintiff*,

    v.

ACTAVIS HOLDCO U.S., INC., APOTEX CORP.,
DR. REDDY'S LABORATORIES, INC.,
GLENMARK PHARMACEUTICALS INC., USA,
LUPIN PHARMACEUTICALS, INC., MYLAN
INC., MYLAN PHARMACEUTICALS INC.,
TEVA PHARMACEUTICALS USA, INC., and
ZYDUS PHARMACEUTICALS (USA) INC.,

        *Defendants*.

No. _____

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

1.      The claims in this case arise from a broad conspiracy among manufacturers of generic drugs to fix the prices charged for those drugs in recent years. The conspiracy appears to have been effectuated by direct company-to-company contacts among generic drug manufacturers, as well as joint activities undertaken through trade associations such as the Generic Pharmaceutical Association ("GPhA"). The unlawful conduct undertaken with respect to generic pravastatin sodium ("pravastatin sodium"), a commonly prescribed drug used to lower cholesterol and triglycerides in the blood, is merely a manifestation of that overall conspiracy.

2.      Plaintiff the Detectives Endowment Association of the City of New York ("DEA") brings this action both individually and on behalf of (a) a national injunctive class of persons or entities in the United States and its territories who purchased, paid and/or provided

reimbursement for some or all of the purchase price of pravastatin sodium manufactured by Defendants during the period from October 1, 2013 to the present and (b) a damage class of persons or entities who purchased, paid and/or provided reimbursement for some or all of the purchase price of pravastatin sodium manufactured by Defendants during the period from October 1, 2013 to the present in states identified herein.  All allegations herein are based on information and belief, except for those relating to the Plaintiff.

3.      Pravastatin sodium was introduced in the early 1990s and has been on the market for over 20 years, so it is not a new compound, and in fact generic versions of pravastatin sodium have been on the market for years.  For most of that time, those generic versions have been priced significantly lower than their branded counterparts, but recently pravastatin sodium has experienced unprecedented price increases.

4.      For example, between the fourth quarter of 2013 and the beginning of the second quarter of 2014, the price of pravastatin sodium has increased between *300% and 600%*, depending on the dosage strength and package size.  These price hikes were not the result of competitive market forces; instead, they were the result of Defendants' conspiracy to fix, raise, maintain, and stabilize the prices of, as well as allocate customers and markets for, pravastatin sodium.  Defendants are among the world's largest generic drug manufacturers: Actavis Holdco U.S., Inc.; Apotex Corp.; Dr. Reddy's Laboratories, Inc.; Glenmark Pharmaceuticals Inc. USA; Lupin Pharmaceuticals, Inc.; Mylan Inc.; Mylan Pharmaceuticals Inc.; Teva Pharmaceuticals USA, Inc.; and Zydus Pharmaceuticals (USA) Inc.

5.      Defendants orchestrated their conspiracy through secret communications and meetings, both in private and at public events, such as trade association meetings held by the GPhA, among others.  Oligopolistic conditions—*e.g.*, low numbers of competitors and barriers

- 2 -

to entry in the market for pravastatin sodium—facilitated Defendants' anticompetitive actions and have allowed them to sustain their unlawful supracompetitive pricing to the present.

6.      Defendants' price increases are also the subject of multiple governmental investigations.  The United States Department of Justice Antitrust Division ("DOJ") and the Connecticut Attorney General's Office ("CTAG")—which is leading a multi-state working group of state attorneys general—are conducting sweeping antitrust probes into allegations that as many as a dozen generic drug manufacturers participated in a broad-based conspiracy to fix, raise, maintain, and stabilize the prices of as many as two-dozen generic drugs, including pravastatin sodium. Significantly, the DOJ has issued subpoenas which arise from a federal grand jury proceeding in the Eastern District of Pennsylvania that is investigating whether Defendants and other drug manufacturers conspired to fix generic drug prices. More recently, the DOJ filed its first criminal charges related to the investigation and the CTAG, along with a number of other States, has filed an antitrust complaint against certain generic drug companies alleging a well-coordinated and long-running series of schemes to fix the prices and allocate markets for a number of generic pharmaceuticals sold in the United States.

7.      In addition to these investigations, members of Congress have requested information from certain generic manufacturers concerning their sales of pravastatin sodium and other generic drugs that have similarly undergone significant price increases over the past few years

8.      Plaintiff alleges that during the Class Period, Defendants conspired, combined and contracted to fix, raise, maintain and stabilize prices at which pravastatin sodium would be sold. As a result of Defendants' unlawful conduct, Plaintiff and the other members of the proposed

Classes paid artificially inflated prices that exceeded the amount they would have paid if a competitive market had determined prices for pravastatin sodium.

## JURISDICTION AND VENUE

9.    Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26), for injunctive relief and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Classes by reason of the violations of Sections 1 and 3 of the Sherman Act (15 U.S.C. § 1, 3).

10.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Section 16 of the Clayton Act (15 U.S.C. §26).  In addition, jurisdiction is also conferred upon this Court by 28 U.S.C. §§ 1367.

11.    Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15(a) and 22 and 28 U.S.C § 1391(b), (c) and (d) because during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.  Venue is also proper in this District because the federal grand jury investigating the pricing of generic drugs is empanelled here and therefore it is likely that acts in furtherance of the alleged conspiracy took place here.

12.    This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) sold pravastatin sodium throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and/or (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of

causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## THE PARTIES

13.     Plaintiff DEA is the second largest labor union representing police officers of the New York City Police Department.  The DEA was founded in 1917 to represent active and retired detectives of the New York City Police Department.  The DEA represents 5,500 active and over 12,400 retired New York City Police Detectives.  The DEA has its principal place of business at 26 Thomas Street, New York, New York 10007.  Throughout the Class Period, the DEA purchased and/or paid for some or all the purchase price for pravastatin sodium, thereby suffering injury to its business and property.  The DEA paid and reimbursed more for this product than it would have absent Defendants' anticompetitive conduct to fix, raise, maintain, and stabilize the prices and allocate markets and customers.

14.     Defendant Actavis Holdco U.S., Inc. ("Actavis") is a corporation with its principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey, 07054.  In August 2016, Teva Pharmaceuticals U.S., Inc. acquired Actavis from Allergan plc for $40.5 billion.  In connection with this acquisition, Allergan assigned certain assets of its "generics business" to Actavis, so that by acquiring Actavis, Teva also acquired Allergan's generics business.  Actavis manufactures, markets, and sells generic drug products. During the Class Period, Actavis sold generic pravastatin sodium in the United States.

15.     Defendant Apotex Corp. ("Apotex") is a corporation with its principal place of business at 2400 North Commerce Parkway, Suite 400, Weston, Florida, 33326.  Apotex is a subsidiary of Apotex, Inc., a Canadian company with its principal place of business at 150 Signet

Drive, Toronto, Canada, M9L 1T9.  Apotex manufactures, markets, and sells various generic

drugs.  During the Class Period, Apotex sold generic pravastatin sodium in the United States.

16.     Defendant Dr. Reddy's Laboratories, Inc. ("Dr. Reddy's") is a corporation with

its principal place of business at 107 College Road East, Princeton, New Jersey, 08540.  Dr.

Reddy's is a subsidiary of Dr. Reddy's Laboratories Ltd., an Indian company with its principal

place of business located at 8-2-337, Road No. 3, Banjara Hills, Hyderabad Telangana, India,

500034.  Dr. Reddy's manufactures, markets, and sells various generic drugs.  During the Class

Period, Dr. Reddy's sold generic pravastatin sodium in the United States.

17.     Defendant Glenmark Pharmaceuticals Inc., USA ("Glenmark") is a corporation

with its principal place of business at 750 Corporate Drive, Mahwah, New Jersey, 07430.

Glenmark is a subsidiary of Glenmark Pharmaceuticals Limited, an Indian company with its

principal place of business at Glenmark House, B.D. Sawant Marg, Chakala, Off Western

Express Highway, Andheri (E), Mumbai, India, 400 099.  Glenmark manufactures, markets, and

sells various generic drugs.  During the Class Period, Glenmark sold generic pravastatin sodium

in the United States.

18.     Defendant Lupin Pharmaceuticals, Inc. ("Lupin") is a corporation with its

principal place of business at Harborplace Tower, 111 South Calvert Street, Baltimore,

Maryland, 21202.  Lupin is a subsidiary of Lupin Limited, an Indian company with its principal

place of business at B/4 Laxmi Towers, Bandra Kurla Complex, Bandra (E), Mumbai 400 051,

India.  Lupin manufactures, markets, and sells generic versions of brand pharmaceutical

products.  During the Class Period, Lupin sold generic pravastatin sodium in the United States.

19.     Defendant Mylan Inc. is a Pennsylvania corporation with its principal place of

business at 1000 Mylan Blvd., Canonsburg, Pennsylvania 15317.

20.     Defendant Mylan Pharmaceuticals Inc. is a West Virginia corporation with its principal place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26505.

21.     Defendants Mylan Inc. and Mylan Pharmaceuticals Inc. are collectively referred to as "Mylan."  Mylan manufactures, markets, and sells branded and generic pharmaceutical products in the United States.  During the Class Period, Mylan sold generic pravastatin sodium in the United States.

22.     Defendant Teva Pharmaceuticals USA, Inc. ("Teva") is a Pennsylvania-based corporation with its principal place of business at 1090 Horsham Road, North Wales, Pennsylvania 19454.  Teva is a subsidiary of Teva Pharmaceutical Industries Limited, an Israeli company with principal place of business located at 5 Basel Street, Petach Tikva, Israel 49131. Teva manufactures, markets, and sells various generic pharmaceutical products.  During the Class Period, Teva manufactured and sold generic pravastatin sodium in the United States.

23.     Defendant Zydus Pharmaceuticals (USA) Inc. ("Zydus") is a New Jersey corporation with its principal place of business at 73 Route 31 N., Pennington, New Jersey, 08534.  Zydus is a subsidiary of Zydus Pharmaceuticals Limited, an Indian pharmaceutical company.  Zydus manufactures, markets, and sells various generic pharmaceutical products. During the Class Period, Zydus manufactured and sold generic pravastatin sodium in the United States.

24.     Defendants Actavis, Apotex, Dr. Reddy's, Glenmark, Lupin, Mylan, Teva, and Zydus are referred to collectively as "Defendants."

25.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were

- 7 -

actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

26.     All acts alleged in this Complaint to have been done by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of Defendants' business affairs.

## CO-CONSPIRATORS

27.     Various other persons, firms, corporations and entities have participated as unnamed co-conspirators with Defendants in the violations and conspiracy alleged herein.  In order to engage in the offenses charged and violations alleged herein, these co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

28.     At all relevant times, each Defendant was an agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants. Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts and transactions that are the subject of this action.

## INTERSTATE TRADE AND COMMERCE

29.     The business activities of Defendants that are the subject of this action were within the flow of, and substantially affected, interstate trade and commerce.

30.     During the Class Period, Defendants sold substantial quantities of pravastatin sodium in a continuous and uninterrupted flow of interstate commerce to customers throughout the United States.

## FACTUAL ALLEGATIONS

### The Industry

31.     Defendants manufacture and sell generic versions of a branded drug once the patent on the branded drug expires.

32.     A generic drug is the same as a brand name drug in dosage, safety, strength, how it is taken, quality, performance, and intended use.  Once the FDA approves a generic drug as "therapeutically equivalent" to a brand drug, the generic version can be expected to have equal effect and no difference when substituted for the brand name product.  Prices of generic drugs are significantly less than branded drugs, often 80-85 percent less than the branded drug price.

33.     Representative Elijah E. Cummings ("Cummings"), Ranking Member of the House Committee on Oversight and Government Reform, and Senator Bernie Sanders ("Sanders"), Chairman of the Subcommittee on Primary Health and Aging of the Senate Committee on Health, Education, Labor and Pensions, compiled a chart showing prices for certain generic drugs, including pravastatin sodium, and how those prices substantially increased in 2013:[1]

| Drug | Use | Average Market Price Oct. 2013 | Average Market Price April 2014 | Average Percentage Increase |
|---|---|---|---|---|
| Doxycycline Hyclate (bottle of 500, 100 mg tablets) | antibiotic used to treat a variety of infections | $20 | $1,849 | 8,281% |
| Albuterol Sulfate (bottle of 100, 2 mg tablets) | used to treat asthma and other lung conditions | $11 | $434 | 4,014% |

[1] http://www.sanders.senate.gov/download/face-sheet-on-generic-drug-price-increases?inline=file

| Glycopyrrolate (box of 10 0.2 mg/mL, 20 mL vials) | used to prevent irregular heartbeats during surgery | $65 | $1,277 | 2,728% |
| Divalproex Sodium ER (bottle of 80, 500 mg tablets ER 24H) | used to prevent migraines and treat certain types of seizures | $31 | $234 | 736% |
| **Pravastatin Sodium (bottle of 500, 10 mg tablets)** | **used to treat high cholesterol and to prevent heart disease** | **$27** | **$196** | **573%** |
| Neostigmine Methylsulfate (box of 10 1:1000 vials) | used in anesthesia to reverse the effects of some muscle relaxants | $25 | $121 | 522% |
| Benazepril/Hydrochlorothiazide (bottle of 100, 20-25 mg tablets) | used to treat high blood pressure | $34 | $149 | $420% |

| **Drug** | **Use** | **Average Market Price Nov. 2012** | **Average Market Price Sept. 2014** | **Average Percentage Increase** |
|---|---|---|---|---|
| Isuprel (box of 25, 0.2 mg/mL vials) | used to treat heart attacks and irregular heartbeat | $916 | $4,489 | 390% |
| Nitropress (50 mg vial) | used to treat congestive heart failure and reduce blood pressure | $44 | $215 | 388% |

| **Drug** | **Use** | **Average Market Price Oct. 2012** | **Average Market Price June 2014** | **Average Percentage Increase** |
|---|---|---|---|---|
| Digoxin (single tablet, 250 mcg) | used to treat irregular heartbeats and heart failure | $0.11 | $1.10 | 884% |

34.     Due to the price differentials between branded and generic drugs, as well as other institutional features of the pharmaceutical industry, pharmacists liberally and substantially substitute the generic drug when presented with a prescription for the branded drug.  Since passage of the Hatch-Waxman Act (Pub. L. No. 98-417, 98 Stat. 1585 (codified at 15 U.S.C. §§ 68b-68c, 70b; 21 U.S.C. §§ 301 note, 355, 360cc; 28 U.S.C. § 2201; 35 U.S.C. §§ 156, 271, 282)), every state has adopted substitution laws requiring or permitting pharmacies to substitute generic drug equivalents for branded drug prescriptions (unless the prescribing physician specifically orders otherwise by writing "dispense as written" or similar language on the prescription).

## Market For Pravastatin Sodium

35.     The market for pravastatin sodium is mature and the Defendants in that market can only gain market share by competing on price.

36.     Pravastatin sodium is a drug used for the treatment of high cholesterol and triglycerides.  It is part of a class of drugs known as "statins."  Pravastatin sodium is a derivative of compactin, which was identified in the 1970s by researchers at Sankyo Pharma Inc.  Bristol Myers Squibb ("BMS") manufactures and sells a branded version of pravastatin sodium under the name Pravachol®, which BMS received approval for on October 31, 1991, and began selling soon thereafter.  Pravachol generated over $1 billion in annual sales.

37.     Defendants are manufacturers and/or distributors of pravastatin sodium.  They collectively sell hundreds of millions of dollars' worth of pravastatin sodium every year in the United States.

## Defendants' Pricing Conduct For Generic Pravastatin sodium And The Effects Thereof

38.     As part of their conspiracy, Defendants agreed to raise the prices of pravastatin sodium sold in the United States.  Prices for pravastatin sodium inexplicably rose from only a few pennies per tablet to nearly $1.00 per tablet.  According to a *New York Times* article, the "price that hospitals and pharmacies . . . pay for a bottle of pravastatin, a drug to lower cholesterol, rose to $196 from $27" between October 2013 and April 2014.[2]

39.     Defendants' price hikes have drawn significant scrutiny by the United States Congress and by federal and state antitrust regulators.  Douglas P. Hoey, Chief Executive Officer of the National Community Pharmacists' Association, wrote a January 8, 2014 letter asking

---

[2] Elisabeth Rosenthal, *Officials Question the Rising Costs of Generic Drugs*, New York Times (Oct. 7, 2014), https://www.nytimes.com/2014/10/08/business/officials-question-the-rising-costs-of-generic-drugs.html?_r=0.

Congress to conduct an investigation into generic drug price increases.[3]  Then, on October 2,

2014, Cummings and Sanders sent letters to various of the Defendants, stating in part:

> This dramatic increase in generic drug prices results in decreased access for
> patients. According to the National Community Pharmacists Association
> (NCPA), a 2013 member survey found that pharmacists across the country "have
> seen huge upswings in generic drug prices that are hurting patients and
> pharmacies ability to operate" and "77% of pharmacists reported 26 or more
> instances over the past six months of a large upswing in a generic drug's
> acquisition price." These price increases have a direct impact on patients' ability
> to purchase their needed medications. The NCPA survey found that "pharmacists
> reported patients declining their medication due to increased co-pays," and "84%
> of pharmacists said that the acquisition price/lagging reimbursement trend is
> having a 'very significant' impact on their ability to remain in business to
> continue serving patients." (Footnotes omitted).[4]

    40.    The October letters to Mylan, Dr. Reddy's, Apotex, Teva, and Zydus also

included a chart showing huge increases in the average market prices of various doses of generic

pravastatin sodium products between October 2013 and April 2014 similar to the one below:

| Drug | SKU | Average Market Price October 2013 | Average Market Price April 2014 | Cost Increase | Average Percentage Increase |
|---|---|---|---|---|---|
| Pravastatin Sodium | bottle of 1000, 20mg tablets | $77 | $368 | $291 | 447% |
| Pravastatin Sodium | bottle of 1000, 40mg tablets | $114 | $540 | $426 | 528% |
| Pravastatin Sodium | bottle of 500, 10mg tablets | $27 | $196 | $169 | 573% |
| Pravastatin Sodium | bottle of 500, 80mg tablets | $59 | $299 | $240 | 365% |
| Pravastatin Sodium | bottle of 90, 10mg tablets | $6 | $34 | $28 | 420% |
| Pravastatin Sodium | bottle of 90, 20mg tablets | $7 | $35 | $28 | 446% |
| Pravastatin Sodium | bottle of 90, 40mg tablets | $9 | $51 | $42 | 473% |
| Pravastatin Sodium | bottle of 90, 80mg tablets | $14 | $52 | $39 | 334% |

    41.    Trade association meetings, including those sponsored by GPhA, provided

pravastatin sodium manufacturers with the opportunity to meet and agree to fix pravastatin

sodium prices, as well as allocate markets.  Defendants' coordinated pricing has deprived, and

---

[3] https://www.ncpanet.org/pdf/leg/jan14/letter-generic-spikes.pdf.

[4] The letters can be accessed at http://www.sanders.senate.gov/newsroom/press-releases/congress-investigating-why-generic-drug-prices-are-skyrocketing.

continues to deprive, Plaintiff and members of the Classes the benefits of free and open competition—namely, lower prices for generic versions of pravastatin sodium.  As a result, Plaintiff and members of the Classes have paid and continue to pay non-competitive prices for pravastatin sodium.

## Regulators' Investigations into Generic Drug Pricing

42.     In July of 2014, the State of Connecticut commenced an investigation into reports of unexplained and suspicious price increases for a number of generic drugs.  This investigation was followed shortly thereafter by a Congressional inquiry and a reported criminal grand jury investigation by the United States Department of Justice Antitrust Division.

43.     Reports suggest that close to two dozen drugs and a number of drug companies are under investigation by state and federal antitrust enforcers.

44.     A number of drug manufacturers, including many of the Defendants in this action, have been contacted in connection with the federal and state antitrust investigations.  For example, certain manufacturers have received subpoenas from the DOJ seeking information about the marketing, pricing and sales of certain generic drugs.  Other manufacturers have also received subpoenas from State Attorney Generals seeking similar information.  At least one Defendant has disclosed that search warrants were executed in connection with the DOJ's investigation.

45.     On December 12, 2016, the first criminal charges were filed by the DOJ as a result of its investigation into antitrust violations in the generic drug industry.  The Informations, filed in the United States District Court for the Eastern District of Pennsylvania, alleged that two individuals and their co-conspirators violated Section 1 of the Sherman Act, and "knowingly entered into and engaged in a combination and conspiracy with other persons and entities

engaged in the production and sale of generic pharmaceutical products, including doxycyline hyclate…"

46.     On December 14, 2016, a large group of States, by and through their Attorneys General, sued a number of generic drug manufacturers for participating in an illegal conspiracy to raise the price of certain generic drugs.  In their complaint, the States alleged that their investigation has "uncovered evidence of a broad, well-coordinated and long-running series of schemes to fix the prices and allocate markets for a number of generic pharmaceuticals in the United States."  Although the complaint focuses on two drugs, Doxy DR and Glyburide, the States emphasize that they have "uncovered a wide-ranging series of conspiracies implicating numerous different drugs and competitors, which will be acted upon at the appropriate time."

**Factors Increasing The Market's Susceptibility To Collusion**

47.     Publicly available data on the generic pravastatin sodium market in the United States demonstrates that it is susceptible to cartelization by the Defendants.  Factors that make a market susceptible to collusion include: (1) a high degree of industry concentration; (2) significant barriers to entry; (3) inelastic demand; (4) the lack of available substitutes for the goods involved; (5) a standardized product with a high degree of interchangeability between the goods of cartel participants; (6) absence of a competitive fringe of sellers; and (7) intercompetitor contacts and communication.

48.     ***Industry Concentration***.  A high degree of concentration facilitates the operation of a cartel because it makes it easier to coordinate behavior among co-conspirators.  The pravastatin sodium market is highly concentrated and is dominated by less than ten companies.

49.     In the United States generic pravastatin sodium market, the number of competitors has dwindled.  This has created cartel conditions, and as the dominant players in the

pravastatin sodium market, Defendants were able to fix, raise, and maintain their prices for pravastatin sodium without competitive threats from rival generic drug manufacturers.

50.     ***Barriers To Entry***.  Supracompetitive pricing in a market normally attracts additional competitors who want to avail themselves of the high levels of profitability that are available.  However, the presence of significant barriers to entry makes this more difficult and helps to facilitate the operation of a cartel.

51.     Here, there are significant capital, regulatory and intellectual property barriers to entry in the generic pravastatin sodium market.  In addition to significant regulatory requirements and oversight, costs of manufacture represent a substantial barrier to entry in the market for generic pravastatin sodium.  Intellectual property costs can also be substantial.

52.     ***Demand Inelasticity***. Price elasticity of demand is defined as the measure of responsiveness in the quantity demanded for a product as a result of change in price of the same product.  It is a measure of how demand for a product reacts to a change in price. The basic necessities of life—food, water, and shelter—are examples of goods that experience nearly perfectly inelastic demand at or near the minimums necessary to sustain life. In other words, a person on the verge of dying of thirst will pay almost anything for drinking water. In order for a cartel to profit from raising prices above competitive levels, demand for the product must be sufficiently inelastic such that any loss in sales will be more than offset by increases in revenue on those sales that are made. Otherwise, increased prices would result in declining revenues and profits.

53.     Pravastatin sodium is critical to the health of patients with cholesterol issues; it is considered a medical necessity that must be purchased at whatever cost the Defendants offer it

for sale.  Thus, pravastatin sodium is an excellent candidate for cartelization because price increases will result in more revenue, rather than less.

54.     *Lack of Substitutes*.  Pravastatin sodium is used to lower cholesterol and triglycerides in the blood.  Other statins are not reasonable substitutes because they have different chemistry, pharmacokinetics, potency, and approved indications than pravastatin sodium.  As a result, other statins are not considered therapeutically equivalent to pravastatin sodium.  And branded pravastatin sodium does not serve as an economic substitute for generic pravastatin sodium, because branded products generally maintain substantial price premiums over their generic counterparts, making them inapt substitutes even when generic prices soar.

55.     *Standardized Product with High Degree of Interchangeability*. A commodity-like product is one that is standardized across suppliers and allows for a high degree of substitutability among different suppliers in the market. When products offered by different suppliers are viewed as interchangeable by purchasers, it is easier for the suppliers to agree on prices for the good in question and it is easier to monitor these prices effectively. Here, the generic pravastatin sodium made by the Defendant manufacturers is a chemical compound composed of the same raw materials.

56.     *Absence of a Competitive Fringe of Sellers*. Companies that are not part of the conspiracy can erode at conspirators' market shares by offering products at a lower, more competitive price.  This reduces revenue and makes sustaining a conspiracy more difficult.  In the market for generic pravastatin sodium, there is no realistic threat that a fringe of competitive sellers will take market share from Defendants. The Defendants in the market for generic pravastatin sodium have oligopolistic power over that market, which facilitates their ability to raise prices without losing market share to non-conspirators.

- 16 -

57.     *Intercompetitor Contacts and Communications*. In order to be successful, collusive agreements require a level of trust among the conspirators.  Collaboration fostered through industry associations facilitate relationships between individuals who would otherwise be predisposed to compete vigorously with each other.

58.     The States investigation found that the generic drug manufacturers "operate, through their respective senior leadership and marketing and sales executives, in a manner that fosters and promotes routine and direct interaction among their competitors."  The States further found that these companies "exploit their interactions at various and frequent industry trade shows, customer conferences and other similar events, to develop relationships and sow the seeds for their illegal agreements.  The anticompetitive agreements are further refined and coordinated at regular 'industry dinners', 'girls nights out', lunches, parties and numerous and frequent telephone calls, emails and text messages."

59.     The States investigation also uncovered, as alleged in their complaint, that most of the conspiratorial conduct was intentionally done in person or by cell phone, in an attempt to avoid creating a record of their illegal evidence.  The States further allege that some generic manufacturers even took overt and calculated steps to destroy evidence of those communications.

## DEFENDANTS' ANTITRUST VIOLATIONS

60.     During the Class Period, the Defendants engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize the prices of generic pravastatin sodium in the United States.

61.     In formulating and effectuating the contract, combination or conspiracy, the Defendants identified above and their co-conspirators engaged in anticompetitive activities, the

purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize the price of generic pravastatin sodium sold in the United States. These activities included the following:

      a.    Defendants participated in meetings and/or conversations to discuss the price of generic pravastatin sodium in the United States;

      b.    Defendants agreed during those meetings and conversations to charge prices at specified levels and otherwise to increase and/or maintain prices of generic pravastatin sodium sold in the United States;

      c.    Defendants agreed during those meetings and conversations to fix the price of generic pravastatin sodium; and

      d.    Defendants issued price announcements and price quotations in accordance with their agreements.

Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful agreements described in the Complaint.

62.    During and throughout the period of the conspiracy alleged in this Complaint, Plaintiff and members of the Classes purchased generic pravastatin sodium from Defendants (or their subsidiaries or controlled affiliates) or their co-conspirators at inflated and supracompetitive prices.

63.    Defendants' contract, combination or conspiracy constitutes an unreasonable restraint of interstate trade and commerce in violation of Sections 1 of the Sherman Act (15 U.S.C. § 1) and the laws of various states.

64.    As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Classes have been injured in their business and property in that they have paid more for generic pravastatin sodium than they would have paid in a competitive market.

65.     The unlawful contract, combination or conspiracy has had the following effects, among others:

a.     price competition in the market for generic pravastatin sodium has been artificially restrained;

b.     prices for generic pravastatin sodium sold by the Defendants have been raised, fixed, maintained, or stabilized at artificially high and non-competitive levels; and

c.     purchasers of generic pravastatin sodium from the Defendants have been deprived of the benefit of free and open competition in the market for generic pravastatin sodium.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action on behalf of itself and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities in the United States and its territories who purchased, paid and/or provided reimbursement for some or all of the purchase price for Defendants' generic pravastatin sodium from October 1, 2013 through the present. This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) all federal and state governmental entities except for cities, towns, or municipalities with self-funded prescription drug plans; (c) all persons or entities who purchased Defendants' generic pravastatin sodium for purposes of resale or directly from Defendants; (d) fully insured health plans (*i.e.*, health plans that purchased insurance covering 100% of their reimbursement obligation to members); and (e) any judges or justices involved in this action and any members of their immediate families.

67.     Plaintiff also brings this action on behalf of itself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the

common law of unjust enrichment and the state antitrust, unfair competition, and consumer protection laws of the states listed below (the "Indirect Purchaser States")[5] on behalf of the following class (the "Damages Class"):

> All persons and entities in the Indirect Purchaser States who purchased, paid and/or provided reimbursement for some or all of the purchase price for Defendants' generic pravastatin sodium from October 1, 2013 through the present. This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) all federal and state governmental entities except for cities, towns, or municipalities with self-funded prescription drug plans; (c) all persons or entities who purchased Defendants' generic pravastatin sodium for purposes of resale or directly from Defendants; (d) fully insured health plans (i.e., health plans that purchased insurance covering 100% of their reimbursement obligation to members); and (e) any judges or justices involved in this action and any members of their immediate families.

68.     The Nationwide Class and the Damages Class are referred to herein as the "Classes."

69.     While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are thousands of members in each Class.

70.     Common questions of law and fact exist as to all members of the Classes.  This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

---

[5] The "Indirect Purchaser States" consist of Arkansas, Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin.

      a.      Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of generic pravastatin sodium and/or engaged in market allocation for generic pravastatin sodium sold by prescription in the United States;

      b.      The identity of the participants of the alleged conspiracy;

      c.      The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

      d.      Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Count;

      e.      Whether the alleged conspiracy violated state antitrust and unfair competition laws, and/or state consumer protection laws, as alleged in the Second and Third Counts;

      f.      Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiff and the members of the Classes, thereby entitling Plaintiff and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Count;

      g.      Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the members of the Classes;

      h.      The effect of the alleged conspiracy on the prices of generic pravastatin sodium sold in the United States during the Class Period;

      i.      The appropriate injunctive and related equitable relief for the Nationwide Class; and

      j.      The appropriate class-wide measure of damages for the Damages Class.

71.    Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for generic pravastatin sodium purchased indirectly from the Defendants and/or their co-conspirators.

72.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiff's interests are coincident with, and not

antagonistic to, those of the other members of the Classes.  Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

73.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

74.      Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

75.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

### FIRST COUNT
**Violation of Section 1 and 3 of the Sherman Act**
**(on behalf of Plaintiff and the Nationwide Class)**

76.     Plaintiff repeats the allegations set forth above as if fully set forth herein.

77.     Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. §§ 1, 3).

78.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

79.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to establish a price floor and artificially fix, raise, stabilize, and control prices for generic pravastatin sodium, thereby creating anticompetitive effects.

80.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for generic pravastatin sodium.

81.    As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Nationwide Class who purchased generic pravastatin sodium have been harmed by being forced to pay inflated, supracompetitive prices for generic pravastatin sodium.

82.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

83.    Defendants' conspiracy had the following effects, among others:

(a) Price competition in the market for generic pravastatin sodium has been restrained, suppressed, and/or eliminated in the United States;

(b) Prices for generic pravastatin sodium provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c) Plaintiff and members of the Nationwide Class who purchased generic pravastatin sodium indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

84.     Plaintiff and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for generic pravastatin sodium purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

85.     The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

86.     Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND COUNT
### Violation of State Antitrust Statutes
### (on behalf of Plaintiff and the Damages Class)

87.     Plaintiff repeats the allegations set forth above as if fully set forth herein.

88.     During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of generic pravastatin sodium in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

89.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for generic pravastatin sodium and to allocate customers for generic pravastatin sodium in the United States.

90.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including: (a) participating in meetings and conversations among themselves in the United States during which they agreed to price generic pravastatin sodium at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to generic pravastatin sodium provided in the United States; and (b) participating in meetings and trade association conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

91.     Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize prices of generic pravastatin sodium.

92.     Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

93.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Arizona Revised Statutes, §§ 44-1401, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) price competition for generic pravastatin sodium was restrained, suppressed, and eliminated throughout Arizona; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and

are threatened with further injury. By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

94.     Defendants have entered into an unlawful agreement in restraint of trade in violation of California Business and Professions Code §§ 16700 *et seq.*  During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of California Business and Professions Code Section § 16720.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of generic pravastatin sodium at supracompetitive levels.  The aforesaid violations of Section 16720 consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of generic pravastatin sodium.  For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and creating a price floor, fixing, raising, and stabilizing the price of generic pravastatin sodium.  The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition for generic pravastatin sodium has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for generic pravastatin sodium provided by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased generic pravastatin sodium directly or indirectly from

Defendants and their co-conspirators have been deprived of the benefit of free and open competition. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for generic pravastatin sodium than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to California Business and Professions Code § 16750(a).

95.     Defendants have entered into an unlawful agreement in restraint of trade in violation of District of Columbia Code Annotated §§ 28-4501, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased generic pravastatin sodium that was shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased generic pravastatin sodium in the District of Columbia that was shipped by Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for generic pravastatin sodium, including in the District of Columbia. During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have

entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

96.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-1, *et seq*. Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq*.

97.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act (740 Illinois Compiled Statutes 10/1, *et seq.*). Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Illinois; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiff and members of the Damages Class were deprived of free and

open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

98.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §§ 553.1, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Iowa; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553, *et seq*.

99.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Kansas Statutes Annotated, §§ 50-101, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Kansas; (2) generic pravastatin sodium prices

were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

100. Defendants have entered into an unlawful agreement in restraint of trade in violation of Maine Revised Statutes (Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*). Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Maine; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat.

Ann. 10, §§ 1101, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

101.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Michigan Compiled Laws Annotated §§ 445.771, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium competition was restrained, suppressed, and eliminated throughout Michigan; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

102.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Minnesota Annotated Statutes §§ 325D.49, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive,

artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

103.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Mississippi Code Annotated §§ 75-21-1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq*.

104.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Defendants' combinations or

conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

105.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Nevada; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into

agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.*
Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada
Rev. Stat. Ann. §§ 598A, *et seq.*

106.    Defendants have entered into an unlawful agreement in restraint of trade in
violation of New Hampshire Revised Statutes §§ 356:1, *et seq*.  Defendants' combinations or
conspiracies had the following effects: (1) generic pravastatin sodium price competition was
restrained, suppressed, and eliminated throughout New Hampshire; (2) generic pravastatin
sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout
New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and
open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive,
artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants'
illegal conduct substantially affected New Hampshire commerce.  As a direct and proximate
result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been
injured in their business and property and are threatened with further injury.  By reason of the
foregoing, Defendants have entered into agreements in restraint of trade in violation of New
Hampshire Revised Statutes §§ 356:1, *et seq*.  Accordingly, Plaintiff and members of the
Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

107.    Defendants have entered into an unlawful agreement in restraint of trade in
violation of New Mexico Statutes Annotated §§ 57-1-1, *et seq*.  Defendants' combinations or
conspiracies had the following effects: (1) generic pravastatin sodium price competition was
restrained, suppressed, and eliminated throughout New Mexico; (2) generic pravastatin sodium
prices were raised, fixed, maintained and stabilized at artificially high levels throughout New
Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open

competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

108.    Defendants have entered into an unlawful agreement in restraint of trade in violation of New York General Business Laws §§ 340, *et seq.*  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout New York; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium that were higher than they would have been absent the Defendants' illegal acts.  During the Class Period, Defendants' illegal conduct substantially affected New York commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.*  The conduct set forth above is a *per se* violation of the Act.

Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

109.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

110.    Defendants have entered into an unlawful agreement in restraint of trade in violation of North Dakota Century Code §§ 51-08.1-01, *et seq.*  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive,

artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants'

illegal conduct had a substantial effect on North Dakota commerce.  As a direct and proximate

result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been

injured in their business and property and are threatened with further injury.  By reason of the

foregoing, Defendants have entered into agreements in restraint of trade in violation of North

Dakota Cent. Code §§ 51-08.1-01, *et seq*.  Accordingly, Plaintiff and members of the Damages

Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

111.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of Oregon Revised Statutes §§ 646.705, *et seq*.  Defendants' combinations or

conspiracies had the following effects: (1) generic pravastatin sodium price competition was

restrained, suppressed, and eliminated throughout Oregon; (2) generic pravastatin sodium prices

were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3)

Plaintiff and members of the Damages Class were deprived of free and open competition; and (4)

Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for

generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct had a

substantial effect on Oregon commerce.  As a direct and proximate result of Defendants'

unlawful conduct, Plaintiff and members of the Damages Class have been injured in their

business and property and are threatened with further injury.  By reason of the foregoing,

Defendants have entered into agreements in restraint of trade in violation of Oregon Revised

Statutes §§ 646.705, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all

relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

112.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of South Dakota Codified Laws §§ 37-1-3.1, *et seq*.  Defendants' combinations or

conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

113.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Tennessee Code Annotated §§ 47-25-101, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing,

Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

114.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Utah; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq*.

115.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Vermont; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4)

Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

116.    Defendants have entered into an unlawful agreement in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

117.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) generic pravastatin sodium prices were graised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

118.    Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement.  Plaintiff and members of the Damages Class have paid more for generic pravastatin sodium than they otherwise would have paid in the absence of Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

119.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of members of the Plaintiff and the members of the Damages Class.

120.     Accordingly, Plaintiff and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD COUNT

**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiff and the Damages Class)**

121.     Plaintiff repeats the allegations set forth above as if fully set forth herein.

122.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

123.     Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et. seq.*  Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic pravastatin sodium was sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.  The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).  Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supracompetitive,

artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants'

illegal conduct substantially affected Arkansas commerce and consumers.  As a direct and

proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the

Damages Class have been injured in their business and property and are threatened with further

injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in

violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiff and the

members of the Damages Class seek all relief available under that statute.

124.    Defendants have engaged in unfair competition or unfair, unconscionable,

deceptive or fraudulent acts or practices in violation of California Business and Professions Code

§ 17200, *et seq*.  During the Class Period, Defendants manufactured, marketed, sold, or

distributed generic pravastatin sodium in California, and committed and continue to commit acts

of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and

Professions Code, by engaging in the acts and practices specified above.  This claim is instituted

pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain

restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the

California Business and Professions Code, commonly known as the Unfair Competition Law.

The Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions,

misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a

common, continuous, and continuing course of conduct of unfair competition by means of unfair,

unlawful, and/or fraudulent business acts or practices within the meaning of California Business

and Professions Code § 17200, *et seq.*, including, but not limited to, the following: (1) the

violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section

16720, *et seq.* of the California Business and Professions Code, set forth above.  Defendants'

acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq*. of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent; (3) Defendants' acts or practices are unfair to purchasers of generic pravastatin sodium in the State of California within the meaning of Section 17200, California Business and Professions Code; and (4) Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.  Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.  The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.  The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for generic pravastatin sodium.  Plaintiff and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.  The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.  As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiff and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, §§ 17203 and 17204.

125.    Defendants have engaged in unfair competition or unfair, unconscionable, or
deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*
Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing,
controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which
generic pravastatin sodium was sold, distributed or obtained in the District of Columbia.  The
foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-
3904.  Plaintiff was not aware of Defendants' price-fixing conspiracy and was therefore unaware
that it was being unfairly and illegally overcharged.  There was a gross disparity of bargaining
power between the parties with respect to the price charged by Defendants for generic
pravastatin sodium.  Defendants had the sole power to set that price and Plaintiff had no power to
negotiate a lower price.  Moreover, Plaintiff lacked any meaningful choice in purchasing generic
pravastatin sodium because it was unaware of the unlawful overcharge and there was no
alternative source of supply through which Plaintiff could avoid the overcharges.  Defendants'
conduct with regard to sales of generic pravastatin sodium, including their illegal conspiracy to
secretly fix the price of generic pravastatin sodium at supracompetitive levels and overcharge
consumers, was substantively unconscionable because it was one-sided and unfairly benefited
Defendants at the expense of Plaintiff and the public.  Defendants took grossly unfair advantage
of Plaintiff.  The suppression of competition that has resulted from Defendants' conspiracy has
ultimately resulted in unconscionably higher prices for purchasers so that there was a gross
disparity between the price paid and the value received for generic pravastatin sodium.
Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price
competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2)
generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially

high levels throughout the District of Columbia; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  As a direct and proximate result of the Defendants' conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

126.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*  Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Florida; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

127.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*  Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

128.    Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Massachusetts Gen. Laws, Ch 93A, § 1, *et seq.*  Defendants were engaged in trade or commerce as defined by G.L. 93A. Defendants, in a market that includes Massachusetts, agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic pravastatin sodium was sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.  The aforementioned conduct on the part of the Defendants constituted "unfair methods of competition and unfair or deceptive acts or practices in the

conduct of any trade or commerce," in violation of Massachusetts Gen. Laws, Ch 93A, § 2, 11.

Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price

competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) generic

pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels

throughout Massachusetts; (3) Plaintiff and the members of the Damages Class were deprived of

free and open competition; and (4) Plaintiff and the members of the Damages Class paid

supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class

Period, Defendants' illegal conduct substantially affected Massachusetts commerce and

consumers.  As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff

and the members of the Damages Class have been injured in their business and property and are

threatened with further injury.  Defendants have engaged in unfair competition or unfair or

deceptive acts or practices in violation of Massachusetts Gen. Laws, Ch 93A, §§ 2, 11, that were

knowing or willful, and, accordingly, Plaintiff and the members of the Damages Class seek all

relief available under that statute, including multiple damages.

129.    Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev.

Stat. § 407.010, *et. seq.*  Plaintiff and members of the Damages Class purchased generic

pravastatin sodium for personal or family purposes.  Defendants engaged in the conduct

described herein in connection with the sale of generic pravastatin sodium in trade or commerce

in a market that includes Missouri.  Defendants agreed to, and did in fact affect, fix, control,

and/or maintain, at artificial and non-competitive levels, the prices at which generic pravastatin

sodium was sold, distributed, or obtained in Missouri, which conduct constituted unfair practices

in that it was unlawful under federal and state law, violated public policy, was unethical,

oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class. Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for generic pravastatin sodium. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of generic pravastatin sodium they purchased. Defendants misrepresented the real cause of price increases and/or the absence of price reductions in generic pravastatin sodium by making public statements that were not in accord with the facts. Defendants' statements and conduct concerning the price of generic pravastatin sodium were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing generic pravastatin sodium at prices established by a free and fair market. Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Missouri; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act. As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair

practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

130.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.* Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Montana; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants marketed, sold, or distributed generic pravastatin sodium in Montana, and Defendants' illegal conduct substantially affected Montana commerce and consumers.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

131.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*  Defendants

agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling

and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic

pravastatin sodium was sold, distributed or obtained in New Mexico and took efforts to conceal

their agreements from Plaintiff and members of the Damages Class.  The aforementioned

conduct on the part of the Defendants constituted "unconscionable trade practices," in violation

of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between

the value received by Plaintiff and the members of the Damages Class and the prices paid by

them for generic pravastatin sodium as set forth in N.M.S.A., § 57-12-2E.   Plaintiff was not

aware of Defendants' price-fixing conspiracy and was therefore unaware that it was being

unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the

parties with respect to the price charged by Defendants for generic pravastatin sodium.

Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower

price.  Moreover, Plaintiff lacked any meaningful choice in purchasing generic pravastatin

sodium because it was unaware of the unlawful overcharge and there was no alternative source

of supply through which Plaintiff could avoid the overcharges.  Defendants' conduct with regard

to sales of generic pravastatin sodium, including their illegal conspiracy to secretly fix the price

of generic pravastatin sodium at supracompetitive levels and overcharge consumers, was

substantively unconscionable because it was one-sided and unfairly benefited Defendants at the

expense of Plaintiff and the public.  Defendants took grossly unfair advantage of Plaintiff.  The

suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted

in unconscionably higher prices for consumers so that there was a gross disparity between the

price paid and the value received for generic pravastatin sodium.  Defendants' unlawful conduct

had the following effects: (1) generic pravastatin sodium price competition was restrained,

suppressed, and eliminated throughout New Mexico; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.  As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

132.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*  Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which generic pravastatin sodium was sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.  Defendants and their co-conspirators made public statements about the prices of generic pravastatin sodium that either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for generic pravastatin sodium; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.  Because of Defendants' unlawful trade practices in the State of New York, New York class members who indirectly purchased generic pravastatin sodium were

misled to believe that they were paying a fair price for generic pravastatin sodium or the price

increases for generic pravastatin sodium were for valid business reasons; and similarly situated

consumers were potentially affected by Defendants' conspiracy.  Defendants knew that their

unlawful trade practices with respect to pricing generic pravastatin sodium would have an impact

on New York consumers and not just the Defendants' direct customers.  Defendants knew that

their unlawful trade practices with respect to pricing generic pravastatin sodium would have a

broad impact, causing consumer class members who indirectly purchased generic pravastatin

sodium to be injured by paying more for generic pravastatin sodium than they would have paid

in the absence of Defendants' unlawful trade acts and practices.  The conduct of the Defendants

described herein constitutes consumer-oriented deceptive acts or practices within the meaning of

N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the

public at large, and harmed the public interest of New York State in an honest marketplace in

which economic activity is conducted in a competitive manner.  Defendants' unlawful conduct

had the following effects: (1) generic pravastatin sodium price competition was restrained,

suppressed, and eliminated throughout New York; (2) generic pravastatin sodium prices were

raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3)

Plaintiff and members of the Damages Class were deprived of free and open competition; and (4)

Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for

generic pravastatin sodium.  During the Class Period, Defendants marketed, sold, or distributed

generic pravastatin sodium in New York, and Defendants' illegal conduct substantially affected

New York commerce and consumers.  During the Class Period, each of the Defendants named

herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured,

sold and/or distributed generic pravastatin sodium in New York.  Plaintiff and members of the

Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

133.    Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.  Defendants

agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling

and/or maintaining, at artificial and non-competitive levels, the prices at which generic

pravastatin sodium was sold, distributed or obtained in North Carolina and took efforts to

conceal their agreements from Plaintiff and members of the Damages Class.  Defendants' price-

fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up

their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of

Defendants' price-fixing conspiracy.  Defendants committed inherently deceptive and self-

concealing actions, of which Plaintiff could not possibly have been aware.  Defendants and their

co-conspirators publicly provided pretextual and false justifications regarding their price

increases.  Defendants' public statements concerning the price of generic pravastatin sodium

created the illusion of competitive pricing controlled by market forces rather than

supracompetitive pricing driven by Defendants' illegal conspiracy.  Moreover, Defendants

deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence

of the conspiracy to outsiders.  The conduct of the Defendants described herein constitutes

consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which

resulted in consumer injury and broad adverse impact on the public at large, and harmed the

public interest of North Carolina consumers in an honest marketplace in which economic activity

is conducted in a competitive manner.  Defendants' unlawful conduct had the following effects:

(1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated

throughout North Carolina; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants marketed, sold, or distributed generic pravastatin sodium in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.  During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed generic pravastatin sodium in North Carolina.  Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

134.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*).  Members of this Damages Class purchased generic pravastatin sodium for personal, family, or household purposes.  Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which generic pravastatin sodium was sold, distributed, or obtained in Rhode Island. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for generic

pravastatin sodium.  Defendants owed a duty to disclose such facts, and considering the relative

lack of sophistication of the average, non-business purchaser, Defendants breached that duty by

their silence.  Defendants misrepresented to all purchasers during the Class Period that

Defendants' generic pravastatin sodium prices were competitive and fair.  Defendants' unlawful

conduct had the following effects: (1) generic pravastatin sodium price competition was

restrained, suppressed, and eliminated throughout Rhode Island; (2) generic pravastatin sodium

prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode

Island; (3) Plaintiff and members of the Damages Class were deprived of free and open

competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive,

artificially inflated prices for generic pravastatin sodium.  As a direct and proximate result of the

Defendants' violations of law, Plaintiff and members of the Damages Class suffered an

ascertainable loss of money or property as a result of Defendants' use or employment of

unconscionable and deceptive commercial practices as set forth above.  That loss was caused by

Defendants' willful and deceptive conduct, as described herein.  Defendants' deception,

including their affirmative misrepresentations and omissions concerning the price of generic

pravastatin sodium, likely misled all purchasers acting reasonably under the circumstances to

believe that they were purchasing generic pravastatin sodium at prices set by a free and fair

market.  Defendants' affirmative misrepresentations and omissions constitute information

important to Plaintiff and members of the Damages Class as they related to the cost of generic

pravastatin sodium they purchased.  Defendants have engaged in unfair competition or unfair or

deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and,

accordingly, Plaintiff and members of the Damages Class seek all relief available under that

statute.

135.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10, *et seq*.).  Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq*., and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

136.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*  Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which generic pravastatin sodium was sold, distributed, or obtained in Vermont.  Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for generic pravastatin sodium.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their

silence.  Defendants misrepresented to all purchasers during the Class Period that Defendants' generic pravastatin sodium prices were competitive and fair.  Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Vermont; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.  Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of generic pravastatin sodium, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing generic pravastatin sodium at prices set by a free and fair market.  Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

## FOURTH COUNT
### Unjust Enrichment
### (on behalf of Plaintiff and the Damages Class)

137.    Plaintiff repeats the allegations set forth above as if fully set forth herein.

138.     As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on generic pravastatin sodium.

139.     Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff and the members of the Damages Class for generic pravastatin sodium manufactured by Defendants during the Class Period.

140.     Plaintiff and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may make claims on a *pro rata* basis

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment that:

1.      The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

2.      That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed: (a) an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act; (b) a *per se* violation of Section 1 of the Sherman Act; (c) an unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state

antitrust and unfair competition and consumer protection laws as set forth herein; and (d) acts of unjust enrichment by Defendants as set forth herein.

3.      Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

4.      Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

5.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

6.      Plaintiff and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

7.      Plaintiff and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

8.      Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

9.      Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated:  January 3, 2017               Respectfully submitted,


**BARRACK, RODOS & BACINE**

 s/ Jeffrey B. Gittleman JBG222_____
Gerald J. Rodos
Jeffrey A. Barrack
Jeffrey B. Gittleman
Chad A. Carder
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-0600
Facsimile:  (215) 963-0838
grodos@barrack.com
jbarrack@barrack.com
jgittleman@barrack.com
ccarder@barrack.com

*Counsel for Plaintiff*